RANDLE *v.* WASHINGTON LOAN & TRUST COMPANY.

---

CONTRACTS; VENDOR AND PURCHASER.

Where a contract between the owners of land and another which provided that the latter should have the right for a prescribed period, at

his expense, to subdivide the land into lots and sell the same, accounting to the owners for a specified amount per foot and taking the excess for his services, was subsequently, and after a dispute over its construction, modified by a provision that the owners should cause a plat of a subdivision which the selling agent had had prepared, to be approved by parties named, so that it could be recorded when the dedication of a certain street had been effected, whereupon the selling agent should furnish security in the sum of $6,000 for the faithful performance by him of the contract as modified, it was *held* that the causing by the owners of the plat to be approved by the parties named was a condition precedent to the furnishing of the security by the selling agent, and until that was done he was not in default.

No. 2916.   Submitted October 13, 1916.   Decided December 4, 1916.

HEARING on an appeal by the defendant from a decree of the Supreme Court of the District of Columbia sitting as an equity court requiring the defendant to pay to codefendants a specified sum as liquidated damages, and requiring the trustee to reconvey land to such defendants.          *Reversed and remanded.*

The COURT in the opinion stated the facts as follows:

This appeal is from a decree of the supreme court of the District of Columbia in an equity cause instituted by the Washington Loan & Trust Company, trustee under a deed to it executed pursuant to a contract between appellant, Arthur E. Randle, and the owners of the land thereby conveyed in trust. The owners are known as the Scaggs heirs, and will hereafter be referred to as such.

It appears that in 1909 the Scaggs heirs, owners of certain lands in the District of Columbia, entered into a contract with appellant, whereby he was to have the sole right for a period of five years to subdivide said land into lots, blocks, and squares, including streets, avenues and alleys, and to sell the same at not less than 6 cents per square foot. The subdivisions were to be approved by William C. Woodward and Oscar Luckett before they were to be filed for record. The contract provided that "all streets, avenues, alleys, and lots in any and every subdivision

shall conform to the plan marked, 'Suggested subdivision of Scaggs tract, Benning, District of Columbia, August 10, 1907,' copies of which are in the possession of both parties." All expense of platting, advertising, developing, and selling the land, and the compensation of the trust company for acting as trustee, were to be borne by appellant. Appellant was to receive for his services all of the proceeds in excess of 5 cents per square foot derived from the sale of the lands sold during the first two and one-half years, and all over 6 cents per square foot for the remaining two and one-half years.

Appellant further agreed to effect sales of the land, as follows: Not less than 10 per cent of the entire area by the end of the first year; not less than 30 per cent by the end of the second year; not less than 50 per cent by the end of the third year; not less than 75 per cent by the end of the fourth year, and all of the remaining land at the end of the fifth year. The only penalty provided by the contract for failure of appellant to comply with its terms was its termination as to unsold lands.

In January, 1911, the trust company filed its bill in equity against the contracting parties, averring the failure of appellant to perform his contract, and praying for a construction of the contract and deed, and a definition of the rights, duties, and powers of the parties. The Scaggs heirs answered that appellant was in default, and that the contract had been forfeited; while appellant answered, charging the owners with default due to defendant Luckett's refusal to approve the subdivision plat, so it could be recorded.

A large amount of evidence was taken, but before trial a compromise agreement, dated March 30, 1912, was entered into by the parties. The preamble recited the purpose of the new agreement to be to settle and compromise the differences respecting the construction of the former contract. The original contract was continued in force subject to numerous modifications contained in the new contract. The dates of the old contract for performance of its conditions by appellant were carried forward to conform to the date of the second agreement.

The evidence discloses that prior to the new agreement appel-

lant had a plat of subdivision of 30 acres of the Scaggs land prepared by the surveyor of the District of Columbia. This subdivision adjoined the land of one Matthew Cook. The adjoining tracts were so situated that it seemed advisable to have Cook dedicate Thirty-fourth street through his land for the mutual benefit of all of the parties concerned.

The provisions of the new contract material to this appeal are that the Scaggs heirs shall "cause to be approved by William C. Woodward, Oscar Luckett, and Charles H. Merillat the plat heretofore prepared by the surveyor of the District of Columbia of 30 acres, more or less, of the Scaggs tract and filed in said equity cause as 'exhibit W. J. L. No. 3; and will deposit the plat thus approved with the Washington Loan & Trust Company, or some other depository mutually agreed upon by the parties of the first part, and the party of the second part, in escrow, on condition that it may be recorded in the office of the surveyor of the District of Columbia by said trust company, or other depository, as the official subdivision of the land coincidentally and not otherwise, with the recording of the dedication of Thirty-fourth street, as laid down in the official street extension plan, through the Cook tract from the Benning road to the Scaggs tract, aforesaid, the width of Thirty-fourth street to be the same as to both the Cook and the 30-acre Scaggs Tracts."

The contract further provided that appellant should furnish either a surety company's bond in the sum of $6,000, or first mortgage securities aggregating $7,500, "as collateral security for the faithful performance of the agreement aforesaid of June 10, 1909, and of this agreement during any one of the first four years; said collateral security, whether a bond or first mortgage securities, to be conditioned that in the event of the default on the part of the party of the second part not caused by any act or default in violation of the terms of these agreements on the part of the parties of the first part or said William C. Woodward, Oscar Luckett, or Charles H. Merillat, said collateral security shall immediately become and be the property of the parties of the first part to the amount of $6,000 net over and above all costs and charges, which amount shall be liquidat-

ed damages, and not a penalty. And it is understood and agreed that the collections of said liquidated damages for which said collateral security is herein provided shall immediately be enforceable in said equity cause now pending in court."

A further provision of the contract retained the equity cause open for the entering of a decree forfeiting the security to the owners should the appellant "make default in carrying out the terms and provisions provided to be done during any one of the first four years of the life of said original agreement as modified and supplemented by this agreement."

In October, 1912, the trust company filed a supplemental bill in the original cause, in which it averred that appellant "has refused, neglected, and does still refuse and neglect, to comply with the terms of said agreement of compromise, so far as the same is binding upon him," and prayed that appellant be required "to specifically perform the terms of the agreement of March 30th, 1912."

Appellant answered, denying that he had failed to perform his contract, but averred that on March 30, 1912, he obtained the Cook plat from Cook and deposited it in escrow with the Continental Trust Company, to be recorded coincidentally with the Scaggs plat; that Luckett was notified of the deposit of the Cook plat; that the plat remained on deposit until July 6, 1912, when Cook withdrew it, and "that since the filing of the supplemental bill herein, on the 24th day of October, 1912, this defendant again secured from Cook the said plat and returned it to the Continental Trust Company under the same escrow conditions."

The Scaggs heirs answered, and later filed a cross bill, in which appellant was charged with violating his contract in failing to give the security of $6,000 and in not procuring the dedication of Thirty-fourth street through the Cook land. They prayed that appellant be decreed to pay them $6,000, with interest, and be required in addition to procure and make dedication of Thirty-fourth street, or, in default, to pay the damages to be assessed by the court, and that the trust company be decreed to reconvey the land.

On hearing, the decree appealed from was entered, requiring appellant to pay the $6,000, as liquidated damages, and directing the trust company to reconvey the land.

*Mr. William G. Johnson, Mr. James S. Easby-Smith,* and *Mr. Ralph B. Fleharty,* for the appellant.

*Mr. Charles H. Merillat, Mr. D. W. O'Donoghue, Mr. W. C. Woodward,* and *Mr. A. A. Alexander,* for the appellees.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This case turns entirely upon the supplemental contract, the only question being, Who, by its terms, was obligated as the moving party? We think the duty was clearly imposed upon the Scaggs heirs. They agreed to cause the plat to be approved by Woodward, Luckett, and Merillat. This was the condition precedent to all other conditions and obligations of the parties. Appellant obligated himself to sell land. Before he could carry out his part of the agreement, the owners were to put the land in condition to sell by the approval of the plat preparatory to its filing for record. Much is made of appellant's alleged failure to produce the Cook plat. A close perusal of the contract fails to disclose any agreement on his part to procure the Cook plat. But this contention falls for the reason that appellant did voluntarily procure the Cook plat and place it in escrow with the Continental Trust Company, where it could have been obtained for filing coincidentally with the Scaggs plat. Indeed, it was there when the supplemental contract was signed. It is urged, however, that appellant gave no notice of the deposit in escrow of the Cook plat with the Continental Trust Company. Inasmuch as he was not required to procure it, he was not obligated to give any notice respecting it; but the undisputed evidence is that he did notify Luckett, and notice to him was notice to Woodward and Merillat.

Before appellant was obligated to put up a bond or mortgage notes as collateral security, it was the duty of the Scaggs heirs

to have the plat approved by Woodward, Luckett, and Merillat, and deposited with the Washington Loan & Trust Company, or other depository, for record coincidentally with the Cook plat. It is useless to speculate as to whose duty it was to procure the Cook plat, since the Scaggs heirs totally failed in the condition precedent of depositing the approved plat. Counsel for appellees complain of the failure of appellant to produce the Scaggs plat for approval. We fail to find any provision in the contract which imposed upon him the obligation of hunting up Woodward, Luckett, and Merillat for the purpose of inducing them to perform a duty which the Scaggs heirs had assumed. The plat had been prepared by the surveyor of the District at the appellant's expense, and filed as an exhibit in the pending equity cause, where it was equally available to all parties concerned. It might be inferred from the brief of counsel that appellant had in some mysterious manner concealed and withheld the plat to prevent its approval, but the record supports no such implication. It does appear, however, that appellant did procure the Scaggs plat, which had been approved by Woodward. In company with Cook he took it to the Washington Loan & Trust Company to deposit with the Cook plat to await the approval of Luckett and Merillat, but the trust company refused to receive it. Appellant then deposited it with the Cook plat with the Continental Trust Company, and, as he testifies, requested Merillat and Luckett to approve it, which they neglected or refused to do. We can find no indication of bad faith on the part of appellant. Indeed, he did much more to facilitate matters than he was required to do by the terms of the contract.

The contract is clear, and not difficult of interpretation; and the duties of the parties are clearly expressed. No action was required on the part of appellant until the approval of the Scaggs plat, and until that obligation was discharged, appellees have no standing in equity to enforce default against appellant.

The decree is reversed with costs, and the cause remanded for a decree dismissing the original, cross, and supplemental bills.

*Reversed and remanded.*